UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

KELLY THOMAS JACKSON,

Defendant.

NO. MJ20- 571

COMPLAINT FOR VIOLATIONS
26 U.S.C. §§ 5861(d)
18 U.S.C. § 844(f)(1)
18 U.S.C. § 844(i)

BEFORE, Michelle L. Peterson, United States Magistrate Judge, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### *(Unlawful Possession of a Destructive Device)*

On or about May 30, 2020, at Seattle, within the Western District of Washington, KELLY THOMAS JACKSON did knowingly possess a destructive device, that is, an incendiary device known as a Molotov cocktail, that was not registered to him in the National Firearms Registration and Transfer Record.

All in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(8).

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**COUNT 2**

*(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, KELLY THOMAS JACKSON did maliciously damage and destroy, and attempt to damage and destroy, by means of an explosive, a vehicle, namely, Vehicle 5, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and possessed by the Seattle Police Department, an institution and organization receiving Federal financial assistance.

All in violation of Title 18, United States Code, Sections 844(f)(1) and 844(i).

**COUNT 3**

*(Unlawful Possession of a Destructive Device)*

On or about May 30, 2020, at Seattle, within the Western District of Washington, KELLY THOMAS JACKSON did knowingly possess a destructive device, that is, an incendiary device known as a Molotov cocktail, that was not registered to him in the National Firearms Registration and Transfer Record.

All in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(8).

**COUNT 4**

*(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, KELLY THOMAS JACKSON did maliciously damage and destroy, and attempt to damage and destroy, by means of an explosive, a vehicle, namely, Vehicle 6, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and possessed by the Seattle Police Department, an institution and organization receiving Federal financial assistance.

All in violation of Title 18, United States Code, Sections 844(f)(1) and 844(i).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This complaint is to be presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

The undersigned complainant, Nathan Plough, being duly sworn, further deposes and states as follows:

## INTRODUCTION

I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been a Special Agent with the FBI for approximately two and a half years. I am currently assigned to the Seattle Field Office where I am assigned to investigate domestic terrorism matters.

During my service with the FBI, I have investigated and participated in the investigations of criminal activity, including but not limited to: crimes against persons, crimes against property, and conspiracy against civil rights. During these investigations, I have participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations. As an FBI Agent, I have also conducted or participated in physical surveillance, debriefings of informants, and reviews of records and recordings. I have also managed undercover operations. From these experiences, and from related training, I have become familiar with the ways in which persons coordinate, carry out, and conceal criminal activity. During past investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations.

The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not

COMPLAINT FOR VIOLATIONS - 3

set forth each and every fact that I or others have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

**A. The Seattle Police Department.**

The Seattle Police Department is involved in interstate and foreign commerce and in activities affecting interstate and foreign commerce.[1]  The Seattle Police Department also is an institution and organization that receives Federal financial assistance.  I have received information from SPD's Chief Administration Officer, who oversees the SPD Grants and Contracts Unit, regarding the numerous federally funded grants SPD is currently receiving.  In summary, SPD is presently receiving funding from a variety of federal agencies, including the Department of Justice, the Department of Homeland Security, and the Federal Emergency Management Agency (FEMA).  Collectively, these grants total millions of dollars of federal funding provided to SPD in support of a variety of SPD's core duties and missions, including, but not limited to:

- Enhancing the safety of the community in the event of terrorist threats, active shooter threats, natural disasters, and the gathering of information helpful to law enforcement and the community regarding these sorts of serious threats;

- Providing crime prevention strategies and essential services to elderly, non-English speaking residents, refugees, deaf, blind and developmentally disabled residents of Seattle and working with

---

[1] *See United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001) ("The legislative history of § 844(i) reveals that the statute was crafted specifically to include some non-business property such as police stations and churches.") (citing *Russell v. United States*, 471 U.S. 858, 860 (1985)); *United States v. Laton*, 352 F.3d 286, 300 (6th Cir. 2003) ("When it crafted § 844(i) to encompass the arson of police stations, Congress recognized that the provision of emergency services by municipalities can affect interstate commerce in the active sense of the phrase.") (citing *Jones v. United States*, 529 U.S. 848, 853 n.5 (2000); *Russell*, 471 U.S. at 860–61); *Belflower v. United States*, 129 F.3d 1459, 1462 (11th Cir.1997) (holding that § 844(i) covered the bombing of a police vehicle which a local sheriff's deputy used in his law enforcement responsibilities and that destruction of a police car had "a significant impact on interstate commerce" because the deputy patrolled traffic and made arrests on an interstate highway, issued citations to out-of-state drivers, participated in interstate narcotic investigations, assisted out-of-state authorities in apprehending suspects, recovered stolen property from other states, and attended law enforcement training sessions in other states).

COMPLAINT FOR VIOLATIONS - 4

communities to decrease crime by developing, implementing and coordinating crime prevention programs;

- Bolstering security measures related to the protection of the Port of Seattle;

- Funding the investigations of offenses involving acts of terrorism, chemical, radiological, or biological attacks, crimes against children, and human trafficking; and

- COVID Emergency Stimulus Funding used to pay for things such as personal protective equipment for officers; funding to backfill for officers testing positive for COVID or in quarantine; and the cost of providing protection for lives and property in the event of protests against statewide shelter-in-place orders or re-opening guidelines.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

COMPLAINT FOR VIOLATIONS - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B. The Arsons of Seattle Police Department Vehicles on May 30, 2020.**

On May 30, 2020, there was a large protest in the downtown area of Seattle, Washington. SPD officers and other employees were in the area to direct traffic and ensure the safety of people and property. SPD officers and employees used several vehicles to respond to the protest, including the following vehicles:

*Vehicle 1:* A 2018 Ford Transit Connect van owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio and flashing strobe lights. The SPD Video Unit employees used the van for transportation, to record videos of particular locations and events, and to download surveillance video provided by local businesses and residences in support of SPD criminal investigations. During the protest on May 30, 2020, SPD used and intended to use the van for transport and to document acts of violence and property destruction. Vehicle 1 was parked on 6th Avenue between Pine Street and Olive Way.

*Vehicle 2:* A 2006 Dodge Caravan owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio. The SPD used and intended to use Vehicle 2 in the same manner as Vehicle 1, both generally and during the protest on May 30, 2020. Vehicle 2 was parked on 6th Avenue between Pine Street and Olive Way, slightly behind Vehicle 1.

*Vehicle 3:* A 2009 Chevrolet Express Van owned by SPD and assigned to the South Precinct Anti-Crime Team. This van was not marked as a police vehicle, but was equipped with emergency lights and a police radio. The SPD used Vehicle 3 for the general purpose of transporting police officers and law enforcement equipment. During the protest, Vehicle 3 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 2.

*Vehicle 4:* A 2016 Ford Explorer owned by SPD and used as a patrol car. Vehicle 4 was not marked, but was equipped with a push bumper, emergency lights, police radio, and other police equipment. During the protest, Vehicle 4 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 3.

*Vehicle 5:* A 2017 Ford Explorer owned by SPD and used as a patrol car. Vehicle 5 was not marked, but was equipped with a push bumper,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

emergency lights, police radio, and other police equipment.  During the protest, Vehicle 5 was parked on Pine Street near 5th Avenue.

*Vehicle 6:* A 2016 Ford Explorer owned by SPD and used as a patrol car. Vehicle 6 was not marked, but was equipped with a push bumper, emergency lights, a police radio, and other police equipment.  During the protest, Vehicle 6 was parked on 6th Avenue between Pine Street and Olive Way, directly behind Vehicle 4.

During the protests on May 30, 2020, Vehicles 1, 2, 3, 4, and 5 were all damaged and destroyed by fire by multiple known and unknown suspects.  Vehicle 6 was struck by an ignited incendiary device that then broke open on the adjacent sidewalk.  After the arsons, investigators from SPD, FBI, and ATF examined the damaged vehicles.  Vehicles 1, 3, 4, and 5 were completely destroyed by fire.  Most of what remained were the metal frames of the vehicles.  Vehicle 2 was also heavily damaged and is no longer operable, with the interior destroyed and the engine compartment burned.  ATF Special Agent and Certified Fire Investigator Dawn Dodsworth examined these vehicles.  She classified the fires in Vehicles 1, 3, 4, and 5 as "incendiary," meaning they were caused by human action.  She further determined that the fire in Vehicle 2 was caused by the natural extension and expansion of the fire in Vehicle 1 into Vehicle 2.

**C. Kelly Jackson's Criminal Activities on May 30, 2020.**

Investigators with SPD, FBI, and ATF have obtained and reviewed videos and photographs taken during the events surrounding the burning of the SPD vehicles on May 30, 2020.  This video and photographic evidence came from various sources, including SPD personnel on scene, neighboring building surveillance cameras, footage aired by local news media outlets, publicly reviewable social media posts, and from individuals who attended the protest and took their own photographs and video.

Based on these videos and photographs, FBI and ATF special agents have identified a male suspect who was involved in throwing at least two incendiary devices at the SPD vehicles.  The suspect appears to be a white male with an athletic build.  He was wearing a dark sweatshirt with a distinctive logo on the front, khaki pants, white shoes, a

COMPLAINT FOR VIOLATIONS - 7

half-face respirator with black semi-rectangular filter cartridges, Smith ski goggles with black rims and yellow tinted lens, and a black High Sierra brand backpack.  The white shoes appear to be consistent with the brand/style of Nike Air Force 1's.







UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Video footage shows that by approximately 4:06 p.m., Vehicle 5 was heavily
2  damaged and burned by the actions of Margaret Aislinn Channon and other suspects who
3  are currently unidentified.  Immediately prior to that, at approximately 4:04 p.m., video
4  footage shows the male suspect throwing what appears to be a glass bottle with an ignited
5  fabric or paper wick (*i.e.*, a "Molotov cocktail" device) through the open driver's side
6  door of Vehicle 5.  After the bottle entered Vehicle 5, flames spread rapidly, almost
7  instantaneously, through the passenger compartment.  The spread was consistent with the
8  rapid escape of a flammable liquid from a broken container.  As the flames receded, a
9  few areas of the interior of the vehicle continued to burn.





UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

At approximately 5:20 p.m., video footage shows the same male suspect throwing what appears to be a glass bottle with an ignited fabric or paper wick (another "Molotov cocktail") at the front of Vehicle 6.  The device hit the windshield of Vehicle 6, bounced to the west, and then shattered on the sidewalk.  After the bottle shattered, flames spread rapidly, almost instantaneously, across an approximately 12-foot radius along the sidewalk.  The spread was consistent with the rapid escape of a flammable liquid from a broken container.  After throwing the device, the male subject can be seen running north on 6th Avenue into a large crowd.

On June 24, 2020, the Seattle FBI was forwarded an anonymous tip from the FBI's National Threat Operations Center.  The anonymous reporter stated that they were providing information regarding the identity of an individual "using a 'Molotov' type device to set fire to [a] squad car" during the demonstrations in downtown Seattle on May 30, 2020.  The tip specifically identified the above-referenced male suspect as Kelly Jackson of Edmonds, Washington.  The anonymous reporter stated that they watched a video on a "peers [sic]" phone showing Jackson lighting a device and throwing it at a police vehicle.  The anonymous reporter also stated that they heard that Jackson had been bragging about his activities amongst his friends who attended the protest.  They described Jackson as wearing a "dark sweatshirt – khaki pants and also a gas mask" at the time of the arsons.  The anonymous reporter further stated the gas mask was stolen from Jackson's employer, Jim Dandy Plumbing.

//
//
//
//
//
//
//
//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   FBI agents determined that there is a Jim Dandy Sewer and Plumbing located at

2   6202 214th Ave SW, Mountlake Terrace, Washington.  FBI agents reviewed Jim Dandy's

3   website and Facebook page.  On April 10, 2020, Jim Dandy Sewer and Plumbing posted

4   a picture of an employee wearing company protective equipment.



15   Agents observed that the filter cartridges on the mask in the Facebook photograph

16   appeared to be consistent with the filter cartridges on the mask worn by the male arson

17   suspect on May 30, 2020.  According to the Assistant Weapons of Mass Destruction

18   Coordinator for the Seattle FBI, the respirator shown in the Facebook photograph was a

19   different model of half-face respirator than the male arson suspect wore, but would

20   provide a consistent level of protection.

21   FBI agents queried the Washington Department of Licensing (DOL) and saw that

22   Kelly Thomas Jackson has a Washington State driver's license.  Jackson's residence

23   address is listed with DOL as 21329 95th Avenue West, Edmonds, Washington.  Agents

24   reviewed Jackson's below DOL photograph:

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Agents observed that Jackson's DOL photo appeared consistent with the portion of the male arson suspect's face that was visible above his mask. Agents reviewed Jackson's criminal history and learned that he has been arrested in Snohomish County on prior occasions for, among other crimes, DUIs, resisting arrest, and burglary.

FBI agents individually interviewed three officers with the Edmonds Police Department. The officers were shown photos and videos of the male arson suspect on May 30, 2020. Each of the officers were unable to immediately identify the individual based on the images alone. However, when the agents informed the officers that the suspect was believed to live in Edmonds and had contact with them before, each officer stated that Kelly Jackson could be the suspect. All three officers explained that the suspect appeared consistent with the build, stature, and gait of Jackson. They also knew Jackson to be anti-law enforcement and believed the activities observed to be consistent with his past behavior.

FBI agents reviewed police reports and determined that Jackson typically operates a white 2002 Toyota Tacoma pickup truck, with Washington license plate C76599N. This vehicle is registered in the name of Thomas William Jackson, who is Kelly Jackson's father. On June 24, 25, and 26, 2020, an FBI agent observed the Toyota

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Tacoma parked adjacent to Jim Dandy Sewer and Plumbing in Mountlake Terrace.  The same FBI agent observed the Toyota Tacoma parked at Jackson's residence in Edmonds on June 24 and 25, 2020.

On July 2, 2020, agents observed a white male, believed to be Jackson, leaving his residence and driving the Toyota Tacoma.  Jackson was wearing a dark hooded sweatshirt with a design on the front.  This sweatshirt was consistent with the sweatshirt colors and logo worn by arson suspect on May 30, 2020.



Surveillance photo on July 2, 2020                    Arsonist on May 30, 2020

Specifically, both sweatshirts are black with a small white mark on the left sleeve just above the wrist.  The front of the sweatshirts have a design made up of three images and three words.  The three images are side-by-side and evenly spaced.  The left-most image is nearly the full height of the design, and the other images are roughly one-third to one-half the height of the design.  The three images make up the left side, the bottom, and the left end of the top of the design.  The remainder of the top and the right side of the design are made up of what appears to be three words in white text.  The words are arranged in a vertical column, with one word per line.

On July 3, 2020, agents again observed a white male, believed to be Jackson, leaving Jackson's residence and driving the Toyota Tacoma.  The agents were able to see

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the driver of the vehicle from a very close distance, and the individual was not wearing a hat or mask.  The agents positively identified the driver as Kelly Jackson, based on their familiarity with Jackson's DOL photo and prior booking photos of Jackson from the Snohomish County Jail.

**D.  Jackson's Possession and Use of a Phone during the May 30 Arsons.**

FBI agents have reviewed numerous police reports documenting prior contacts between law enforcement officers and Jackson.  Nine police reports list Jackson's phone number as (425) 892-0092.  Subscriber records obtained from Verizon Wireless list the subscriber for this phone number as Maria Jackson, with the same residential address listed on Kelly Jackson's DOL records.  Based on online research, I am aware that Maria Jackson is Kelly Jackson's mother.  According to the Verizon Wireless records, telephone number (425) 892-0092 is associated with IMEI 354914090230305.  This IMEI is assigned to an Apple iPhone 7 smartphone device ("the iPhone 7").

Based on this investigation, I believe that the arsonist on May 30, 2020, believed to be Jackson, possessed and used a smartphone during the time of the arsons; and specifically, that he possessed and used the iPhone 7 device.  Multiple photographs and videos taken on May 30 show that the arsonist had an object in his pants pocket that was consistent with the size and shape of a smartphone.





UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   According to Verizon Wireless toll records, the iPhone 7 was used during and
2   surrounding the time frame of the arsons.  Between 3:00 p.m. and 6:00 p.m. on May 30,
3   2020, the iPhone 7 received 18 telephone calls for a total of approximately eleven
4   minutes of use; and the iPhone 7 placed five phone calls for a total of approximately three
5   minutes of use.

6   Based on this information, on July 31, 2020, the Honorable Chief Magistrate
7   Judge Brian A. Tsuchida issued a search warrant directing Verizon Wireless to provide
8   the FBI with cell-site and other locator data related to the iPhone 7, believed to be used
9   by Kelly Jackson.  *See* MJ20-488.  On August 4, 2020, Verizon Wireless produced
10  responsive records to the FBI relating to the time period of May 1, 2020, through June
11  30, 2020.

12  The Verizon Wireless records are consistent with Kelly Jackson being in
13  downtown Seattle at the times and locations of the arsons on May 30, 2020.  The records
14  show that between 3:00 p.m. and 5:28 p.m. on May 30, 2020 (the time period of the
15  arsons), the iPhone 7 was used to make calls while connected to cell towers located at the
16  following addresses: (a) 1505 5th Avenue, Seattle; (b) 1200 5th Avenue, Seattle; (c) 1624
17  Boren Avenue, Seattle; (d) 810 Virginia Street, Seattle; (e) "1633 6th Avenue #3&4,"
18  Seattle; and (f) 1831 8th Avenue, Seattle.  These cell towers are all located in the
19  downtown Seattle core retail area.  The recorded azimuth data from the towers is
20  consistent with the iPhone 7 being located within the core retail area from approximately
21  3:36 p.m. until approximately 5:28 p.m. on May 30, 2020.  As discussed previously in
22  this affidavit, the arson suspect threw at least two incendiary devices within the core
23  retail area, one at approximately 4:04 p.m. and one at approximately 5:20 p.m.

24  Notably, during the two month timeframe covered by the records provided by
25  Verizon Wireless, the only day on which the iPhone 7 connected with any of the above
26  mentioned cell towers was May 30, 2020.  During the remainder of the time period, the
27  iPhone 7 never otherwise came within two miles of the cell towers in the downtown
28  Seattle retail core.

COMPLAINT FOR VIOLATIONS - 15

1  **E.      Evidence Stored in Kelly Jackson's iCloud Account.**

2  Records produced by Apple revealed that a particular iCloud account was created

3  in 2019 and registered under the name Kelly Jackson, the residential address 21329 95th

4  Avenue West, Edmonds, Washington, and the phone number (425) 892-0092.  This

5  residential address is the same address listed on Jackson's driver's license and is the

6  address at which agents have observed Jackson coming and going.  The phone number is

7  the same phone number that is tied to Jackson as described above.  According to Apple

8  records, the user of the account most recently registered an iPhone 7 in October 2019.

9  Based on this information, on August 11, 2020, the Honorable Magistrate Judge

10  Mary Alice Theiler issued a search warrant directing Apple to provide the FBI with

11  evidence related to the May 30 arsons that was stored in the above-referenced iCloud

12  account, believed to be used by Kelly Jackson.  *See* MJ20-516.  On August 28, 2020,

13  Apple produced responsive records to the FBI.  These records included, among other

14  things, the contents of Jackson's iCloud Photo Library.  Jackson's iCloud Photo Library

15  contains screenshots, photographs, and videos, including several files that document

16  Jackson's participation in the events of May 30, 2020.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

COMPLAINT FOR VIOLATIONS - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    On May 29, 2020, at 12:17 p.m., a screenshot was captured containing information

2  about the "The Defiant Walk of Resistance Against Injustice."  As reflected in the below

3  screenshot, this protest event was scheduled to occur at Westlake Center in downtown

4  Seattle on Saturday, May 30, 2020, at 3:00 p.m.



16    On May 29, 2020, at 2:51 p.m., a video was created comprised of a series of still

17  images documenting additional information related to the same protest event, including

18  the message:



24    On May 30, 2020, at 11:47 a.m., a screenshot was captured containing information

25  from the website mtlcounterinfo.org, including a list of "Ingredients" used to

26  manufacture a Molotov cocktail.  The recovered screenshot is narrow and cuts off much

27  of the surrounding text.  Based on open source online research, I believe that the

28

COMPLAINT FOR VIOLATIONS - 17

1 screenshot is a portion of the webpage located at www.mtlcounterinfo.org/how-to-make-

2 molotovs.  This webpage states:

3        We think that it's important for confrontational tactical

4        knowledge to be widespread for the coming storms of revolt.

       Confrontational tactics can make us safer, because the police

5        become afraid. We need to be careful when playing with fire,

6        but with care, molotovs can greatly increase our power in the

       streets.

7

8 The screenshot from Jackson's photo library is shown below on the left, along with an

9 image of the full webpage on the right.





On May 30, 2020, at 2:34 p.m., a video was created depicting a white male's hands opening a black bag.  Inside the bag is a green glass bottle with a gold cap, filled with a liquid that is moving inside the bottle (see below screenshot).  This item appears consistent with the Molotov cocktails Jackson threw at Vehicle 5 and Vehicle 6, as depicted in various photographs and videos taken on May 30, 2020.  It is clear that this video was taken inside of a vehicle, because seatbelt fasteners are often visible in the background.



On May 30, 2020, at 3:10 p.m., a screenshot was captured depicting an Apple Maps image showing a navigation route, including the user's current location.  At the time of the screenshot, the user was located at the intersection of Stewart Street and Terry Avenue in downtown Seattle, a few blocks away from the scene of the arsons of Vehicle 5 and Vehicle 6.

On May 30, 2020, at 4:04 p.m., a video was created depicting the male arson suspect throwing what appears to be a glass bottle with an ignited fabric or paper wick (*i.e.*, a "Molotov cocktail" device) through the open driver's side door of Vehicle 5.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After the bottle enters Vehicle 5, flames spread rapidly, almost instantaneously, through the passenger compartment.  The spread was consistent with the rapid escape of a flammable liquid from a broken container.  As the flames receded, a few areas of the interior of the vehicle continued to burn.  Notably, the video begins prior to the subject entering the frame, suggesting foreknowledge of the impending act on the part of the individual capturing the video.  Immediately after throwing the Molotov cocktail into Vehicle 5, the arson subject runs back over to the individual capturing the video and celebrates directly in front of the camera.  The file data associated with this video indicates that it was taken at 4:04 p.m., although it was not "created" in Jackson's iCloud Photo Library until 6:28 p.m.  Based on this information, my training and experience, and the information submitted in the aforementioned anonymous tip, I believe this video was captured by one of Jackson's associates, and provided to Jackson after the fact.  Below are images of the arsonist's distinctive sweatshirt as captured in this video.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 30, 2020, at 7:10 p.m., a photograph was taken using an Apple iPhone 7. This photograph (below) depicts Kelly Jackson wearing a black hooded sweatshirt and a patterned head covering consistent with the distinctive items worn by the arsonist on May 30, 2020.

### D.      The Destructive Devices.

In the course of my investigation, I conferred with ATF Senior Explosives Enforcement Officer (EEO) Brennan Phillips. EEO Phillips has the responsibility within ATF for making Device Determinations under the National Firearms Act as required by 27 C.F.R. § 478.27.  EEO Phillips has conducted an initial review of the evidence relating to the arsons of Vehicle 5 and Vehicle 6 on May 30, 2020.  According to EEO Phillips, the glass container filled with a suspected ignitable liquid and fitted with a wick, commonly known as "Molotov cocktail," was designed as a weapon and would be

COMPLAINT FOR VIOLATIONS - 21

1  properly identified as an incendiary bomb.[2]  Incendiary bombs are "destructive devices"

2  as that term is defined in 26 U.S.C. §5845(f), and are therefore regulated in accordance

3  with the Federal Firearms Regulations.  Additionally, EEO Phillips advised that

4  incendiary bombs fall within the definition of "incendiary device" found in 18 U.S.C.

5  §232(5), and are therefore explosives as that term is defined in 18 U.S.C. §844(j).  EEO

6  Phillips further advised he would need to conduct a further analysis before making a

7  finial Device Determination and submitting it for peer review and approval by the

8  Explosives Enforcement Branch.

9         On September 1, 2020, ATF agents involved with this investigation confirmed that

10  Kelly Jackson had not registered any destructive devices as required under the National

11  Firearms Act.

12  //

13  //

14  //

15  //

16  //

17  ───────────────────

18  [2] The Ninth Circuit Court of Appeals recently reaffirmed the well-settled proposition that a Molotov cocktail device
constitutes a "destructive device" under federal law.  *United States v. Barker*, 689 Fed. Appx. 555 (9th Cir. 2017)

19  ("We hold that a Molotov cocktail fits within the firearm category of 'a destructive device.'  A Molotov cocktail is
an incendiary device that is quite similar to a grenade. Therefore, possession constitutes a crime of violence.").

20  Federal "courts have uniformly held that a fully-assembled Molotov cocktail device – defined as a device
comprising a bottle, gasoline, and a rag – constitutes an 'incendiary ... bomb' or 'similar device' under section

21  5845(f)."  *United States v. Simmons*, 83 F.3d 686, 687–88 (4th Cir. 1996) (citing *United States v. Peterson*, 475 F.2d
806, 811 (9th Cir. 1973) (device comparable to a Molotov cocktail was a "destructive device"); *United States v.*

22  *Neal*, 692 F.2d 1296, 1303-04 (10th Cir.1982) (affirming conviction for possession of a destructive device made
from "a one gallon plastic jug, a flammable liquid, and a rag wick"); *United States v. Campbell*, 685 F.2d 131, 132

23  (5th Cir.1982) (sustaining indictment for possession of a destructive device "made from cloth rags, [and] flammable
liquid with a fuse made of incense sticks"); *United States v. Ross*, 458 F.2d 1144, 1144-46, 1144 n. 1 (5th Cir. 1972)

24  (affirming conviction for possession of "crude incendiary devices" consisting of "a quart glass bottle with cloth
therein and containing a flammable liquid and having a cloth wick in the mouth of said bottle); *United States v.*

25  *Curtis*, 520 F.2d 1300, 1304 (1st Cir.1975) ("[W]hile gasoline, bottles and rags all may be legally possessed, their
combination into the type of home-made incendiary bomb commonly known as a Molotov cocktail creates a

26  destructive device."); *United States v. Wilson*, 546 F.2d 1175, 1177 (5th Cir.) (same); *United States v. Tankersley*,
492 F.2d 962, 966 (7th Cir.1974) (affirming conviction for possession of a "destructive device" which consisted of

27  "a bottle, a firecracker and tape, and paint remover: the components of a Molotov cocktail")).

28

COMPLAINT FOR VIOLATIONS - 22

## **CONCLUSION**

Based on the foregoing, I respectfully submit that there is probable cause to believe that KELLY THOMAS JACKSON committed the above-referenced offenses.

_____
NATHAN PLOUGH
Special Agent, FBI

The above agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the **2nd** day of September, 2020.  Based on the Complaint and the sworn statement, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

COMPLAINT FOR VIOLATIONS - 23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970