Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELLY THOMAS JACKSON,<br><br>Defendant. | NO. CR20-148JLR<br><br>UNITED STATES' SENTENCING MEMORANDUM |

**I.     Introduction.**

On May 30, 2020, there was a large protest gathering in downtown Seattle in support of important racial justice and equity issues. Thousands of people came to participate and express their support for these causes. Nearly all of the protestors acted responsibly and lawfully.

Unfortunately, a small number of people – including defendant Kelly Thomas Jackson – took advantage of the surrounding events to commit acts of violence, including arsons. In doing so, Jackson and others triggered a dangerous change to the environment surrounding the protest – creating an atmosphere of civil disorder that resulted in injuries to protestors, police officers, extensive property destruction, and numerous arrests. Unfortunately, this conduct by a small number of criminal actors caused the indelible

GOVERNMENT'S SENTENCING MEMORANDUM - 1
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

images of the May 30 protest to be burning police cars and billowing smoke throughout the downtown Seattle corridor, rather than the masses of peaceful protestors exercising their civil rights together.

Kelly Jackson was certainly not alone, but he was one of the instigators of the dangerous and violent criminal activities that took place during the May 30 protest. Importantly, Jackson's actions were not a spur-of-the-moment decision; he did not unexpectedly get caught-up in the emotional impact of the protests. Rather, Jackson planned the arsons in advance of the protest. He researched how to make Molotov cocktails; manufactured two of these dangerous devices; brought them to the protest concealed in a bag; and then detonated them on two Seattle Police Department patrol cars. Afterwards, Jackson celebrated his arsons with other like-minded individuals and bragged about them to his friends over social media.

## II. The Sentencing Guidelines Calculations.

The government concurs with the Sentencing Guidelines calculations set forth in the Presentence Report. The Probation Office correctly calculates the total offense level at 21, Jackson's Criminal History Category at III, and the advisory Sentencing Guidelines range to be 46-57 months.

## III. Sentencing Recommendation.

For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of **57 months** and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office. The various statutory sentencing factors support a custodial sentence of 57 months in this case, including, most prominently, the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the history and characteristics of the defendant; and the need for the sentence to afford adequate deterrence to criminal conduct.

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A. The Nature/Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment.**

Jackson's criminal activities were extremely dangerous and serious. In evaluating the defendant's criminal conduct, the Court should focus on several aggravating factors that call for a sentence at the high-end of the advisory Guidelines range.

**1. Jackson's Conduct was Planned and Premediated.**

Jackson planned his arsons – his conduct was premediated. He is not someone who attended the protests with good intentions, but then got caught-up in the moment and acted out without forethought. Instead, Jackson went to the protest with one purpose – to commit arsons against the Seattle Police Department. This is made clear by the evidence recovered from Jackson's iCloud account associated with his iPhone.

On May 29, 2020, the day before the protests, Jackson captured screenshots containing information about the "The Defiant Walk of Resistance Against Injustice." As reflected in the below screenshots, this protest event was scheduled to occur at Westlake Center in downtown Seattle on Saturday, May 30, 2020, at 3:00 p.m.




GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 30, 2020, at 11:47 a.m., Jackson captured a screenshot containing information from the website mtlcounterinfo.org, including a list of "Ingredients" used to manufacture a Molotov cocktail (see below).  The screenshot was taken from the webpage located at www.mtlcounterinfo.org/how-to-make-molotovs.  This webpage specifically advocated for the use of arson tactics against police officers:

> *We think that it's important for confrontational tactical knowledge to be widespread for the coming storms of revolt.  Confrontational tactics can make us safer, because the police become afraid. We need to be careful when playing with fire, but with care, **molotovs can greatly increase our power in the streets***.

```
fire, but with care, molotovs ca[n]
increase our power in the stree[ts]

Ingredients:

Empty 500ml beer bottles
Gloves
Gasoline
Motor oil
Funnel
Gauze or strips of t-shirt
Duct tape

Never touch any of your materi[als without]
gloves, to avoid transferring fin[gerprints]
```

On May 30, 2020, at 2:34 p.m., Jackson created a video in his car while driving to the protest in downtown Seattle.  During the video, Jackson can be seen opening a black bag, revealing inside a green glass bottle with a gold cap, filled with a liquid that is moving inside the bottle (see below screenshot).  This is one of the Molotov cocktails Jackson that threw at the SPD vehicles a few hours later.

//
//
//

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



The above evidence makes clear that Jackson planned to attend the protest a full day in advance; he researched how to manufacture Molotov cocktails; he acquired the needed materials; he assembled the devices; and he transported them to the protest concealed in a bag. This was intentional, planned, premediated conduct.

Moreover, as described in greater detail below, Jackson's arsons were separated by 76 minutes – the first occurred at 4:04 p.m. and the second at 5:20 p.m. This is a crucial fact that belies Jackson's current claim that he acted impulsively and/or as part of a manic episode. The evidence establishes that Jackson had plenty of time to "cool off" and leave the downtown area after the first arson. Instead, over an hour later, he carried out his plan to attack a second Seattle Police Department vehicle using the other Molotov cocktail he manufactured and brought with him.

Given this evidence of planning and premedation, perhaps it is no surprise that law enforcement officers found the poster depicted below hanging on the wall of a bedroom in Jackson's residence (see image below). The poster depicts three protestors marching, one of them holding a flaming Molotov cocktail device, with a burning police

GOVERNMENT'S SENTENCING MEMORANDUM - 5  
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

car in the background. Jackson planned for – and then reenacted – this exact scene in downtown Seattle on May 30.[1]



### 2. Jackson's Conduct was Extremely Dangerous and Created a Substantial Risk of Injury to Numerous other People.

On May 30, Jackson was dressed not for a peaceful protest, but seemingly for a battle. He was wearing a dark sweatshirt with a distinctive logo on the front, khaki pants, a half-face respirator with black semi-rectangular filter cartridges, ski goggles with black rims and a yellow tinted lens, and a black backpack containing the Molotov cocktails (see images below).

//
//
//

---

[1] The poster was found during the execution of a search warrant on the wall of a bedroom seemingly used by Jackson's sister, although it was unclear if she was living in the house at the time.

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

 

At 4:04 p.m., Jackson ignited one of the Molotov cocktail devices and threw it at an already damaged SPD vehicle. Jackson threw the device into the open driver's side door of the patrol car. After the bottle entered the vehicle, flames spread rapidly through the passenger compartment. As the flames receded, areas of the interior of the vehicle continued to burn. Flames also exploded on the sidewalk adjacent to the vehicle. After throwing the device, Jackson ran into a large crowd to conceal himself. A video found in Jackson's iCloud account showed Jackson jumping up and down in the crowd and screaming in celebration of his arson.

At 5:20 p.m., Jackson attacked a second SPD patrol car with another Molotov cocktail device. The device hit the windshield of the vehicle, bounced to the west, and then shattered on the sidewalk. After the bottle shattered, flames spread rapidly across a 12-foot radius along the sidewalk. After throwing the device, Jackson again ran into a large crowd to conceal himself.

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The following pages contain several video stills and photographic images of
2   Jackson's arsons.  These images show the hundreds of people who were standing in the
3   vicinity of the police cars that Jackson attacked.  Many of these people were just a few
4   feet away from the vehicles and even closer to the fires Jackson caused on the sidewalks
5   adjacent to the vehicles.  And, all of them were in harm's way if one of the vehicles had
6   exploded upon detonation of the Molotov cocktails.



GOVERNMENT'S SENTENCING MEMORANDUM - 8
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



GOVERNMENT'S SENTENCING MEMORANDUM - 9
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970





GOVERNMENT'S SENTENCING MEMORANDUM - 10
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



GOVERNMENT'S SENTENCING MEMORANDUM - 11
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



GOVERNMENT'S SENTENCING MEMORANDUM - 12
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fortunately – and somewhat incredibly – no one was injured as a direct result of Jackson's arsons. Had Jackson caused injuries to others, the government certainly would be advocating for a sentence much higher than the Guidelines range. However, the fact that no one was injured is not a mitigating factor here. Jackson knowingly created a risk of substantial injury to numerous other people; only by good fortune did he avoid causing a much more serious harm. This wanton and dangerous conduct calls for a sentence at the high end of the Sentencing Guidelines range.

Indeed, but for the government's exercise of prosecutorial discretion, Jackson would be facing a mandatory minimum sentence of 60 months. Counts 2 and 4 of the Indictment charged Jackson with the offense of Arson, in violation of Title 18, United States Code, Sections 844(f)(1) and (i). Both counts carried a five-year mandatory minimum sentence. Instead, the government allowed Jackson to enter guilty pleas to the Destructive Device charges found in Counts 1 and 3, enabling him to advocate for a lesser sentence. For its part, however, the government continues to believe that a sentence of close to five years – specifically, the high-end of the Guidelines range at 57 months – is the appropriate sentence in this case.

**B. Jackson's History and Characteristics.**

Jackson's history and characteristics contain both aggravating and mitigating factors.

Jackson's criminal history is concerning. Although he has not been convicted of any particularly serious crimes, he has repeatedly been involved in the criminal justice system. He has been convicted of three offenses (DUI, Resisting Arrest, and Minor in Possession). PSR 28-30. He committed the instant offense while under the supervision of the Washington Department of Corrections. PSR 30, 32. He has three pending cases involving burglary charges. PSR 35, 36, 38. And he has been arrested on multiple other occasions for a variety of offenses. PSR 37, 39-41. None of these interventions by local law enforcement and the criminal justice system dissuaded Jackson from engaging in future criminal activities. Instead, the seriousness of his criminal conduct escalated.

GOVERNMENT'S SENTENCING MEMORANDUM - 13
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On the other hand, Jackson suffers from mental health issues and his upbringing involved some difficult circumstances. While the government acknowledges that these aspects of Jackson's background are mitigating, we do not agree with the Probation Office and the defense in terms of the extent to which these factors should mitigate the sentence in this case.

First, the arsons in this case are not convincingly attributable to Jackson's mental health issues. As noted above, the arsons were planned and premeditated at least a day in advance. These were not unforeseen "crimes of opportunity" or spur-of-the-moment manic reactions to the emotional protest environment. Jackson went to the protests to commit the arsons, and he effectively carried out his plan. This is not indicative of a mental health triggered episode.

Second, while Jackson certainly faced difficulties during his upbringing, he also had many advantages provided by his family that numerous other defendants who appear before this Court do not have. Sadly, the backgrounds of many defendants are filled with much more extreme challenges and disadvantages than Jackson experienced. While the government does not dismiss or minimize in any way Jackson's individual experiences, we do not believe they support any further mitigation than already has been extended by the plea agreement (i.e., the dismissal of the Arson charges carrying mandatory minimum sentences).

**C. The Need to Afford Adequate Deterrence to Criminal Conduct.**

This case presents the Court with a unique opportunity to send an important message of general deterrence. Although the concept of general deterrence is often discussed at sentencing hearings, the circumstances of this case place this sentencing factor at the front and center of the analysis.

The defendant's offense did not occur in a vacuum. The May 30 protest in Seattle was not the first, or the last, legitimate protest event to be hijacked by violent actors with other agendas. Regrettably, we have seen similar scenes play out in Seattle and throughout the United States during the spring and summer of 2020 and beyond. Indeed,

GOVERNMENT'S SENTENCING MEMORANDUM - 14
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the instant case is one of several charged by the United States Attorney's Office involving arsons and other dangerous criminal activities occurring in the context of initially peaceful protests turned into civil disorders as the result of violent acts undertaken by a few criminal actors.

The Court should take this valuable opportunity to send a powerful deterrent message to these sorts of criminal actors. The right to peacefully protest and gather in support of social and political causes is one of the dearest and most important rights that we enjoy in the United States. Protecting the ability of our citizens to express their views in this way is of paramount importance. One way to do that is to send a strong message to individuals who would seek to take advantage of, and abuse, the cover of lawful protests to carry out acts of violence, thereby risking the safety of the peaceful protestors and undercutting their important messages and causes.

The government's hope is that before the next individual uses the cover of a lawful protest gathering to detonate a Molotov cocktail against a police department, he or she thinks about the sentence imposed by the Court in this case and reconsiders. *See* PSR Recommendation at 4 ("The image of the Seattle Police Department vehicles ablaze was captured and dispersed throughout the country. [Jackson's] actions symbolized how a peaceful protest can quickly turn into a violent riot. Being able to peacefully assemble is a cornerstone of our society. Mr. Jackson undermined that right, and others need to know that such actions will not be tolerated.").

A term of 57 months in federal prison would send the most appropriate deterrent message in this case.

//
//
//
//
//
//

GOVERNMENT'S SENTENCING MEMORANDUM - 15
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. Conclusion.

For all of the reasons set forth above, the government recommends that the Court sentence the defendant to a term of imprisonment of 57 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

DATED this 23rd day of March, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

/s Todd Greenberg
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-7970
E-mail: Todd.Greenberg4@usdoj.gov

GOVERNMENT'S SENTENCING MEMORANDUM - 16
*United States v. Jackson,* CR20-148JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970